The 4th District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good afternoon. We're here today on case number 4-2-3-0-1-8-7. That's Mulligan v. Loft Rehabilitation & Nursing of Canton. Appearing for the appellee is Leslie Rosen. Ms. Fudge, you may proceed with your argument. Thank you. May it please the Court. The Court's role when faced with a motion to compel arbitration is very limited. Under the facts of our case, the Court's role was limited to just three gateway questions. The first of those gateway questions was whether a written agreement to arbitrate exists. That is a contract formation question which relies upon the elements of offer, acceptance, and consideration. Here, the trial court was right in finding that Mrs. Mulligan had the mental capacity to contract and that she assented to the arbitration agreement by her own signature. The second gateway question is did that five-page arbitration agreement contain a delegation clause? The answer there is yes, it did. The third gateway question is did Mrs. Mulligan ever make a challenge directed specifically to that delegation clause? That delegation clause is paragraph A-2 within the five-page arbitration agreement. The answer to that third question is no. She did not make a challenge directed specifically to paragraph A-2. Rather, she made a challenge directed to the arbitration agreement's five pages as a whole. Counsel, you mentioned the question of whether Mrs. Mulligan had the mental capacity to enter into the contract. Did the plaintiff challenge whether or not she had the mental capacity to do so at the trial level? Yes. How did the trial court address that issue? The trial court considered the evidence. Mrs. Mulligan presented her own affidavit, which I think speaks volumes to her mental capacity, by the way. The court considered the fact she brought this lawsuit on her own behalf. The court considered an affidavit by a doctor that Mrs. Mulligan presented. Then he weighed that with the affidavit that we presented from Dr. Selznick in conjunction with some medical records, as well as considering the statutory presumption in the Illinois Nursing Home Care Act that says that residents who are admitted to a nursing home are presumed to have the mental capacity to contract for their admission unless two exceptions exist. Neither of those two exceptions existed. Let me ask this way. Was any live testimony presented on this issue? No. I don't believe so. What's our standard of review with regard to that issue? Well, I believe that that involved questions of fact. I think there should be deference to the trial court's decision when he considered those facts. That's one of the reasons I'm asking what I do. We are very deferential to fact-finding made by trial courts when they hear evidence. Why should we be deferential when no evidence has been presented? We can read documents just well as the trial court. Why isn't this akin to statutory interpretation or interpretation of contract or interpretation of a will? Because an affidavit from a doctor is evidence. An affidavit from Sandy Mulligan herself is evidence. The court considered that evidence similar to perhaps what it might do on a summary judgment motion. We can read it as well. Why are we deferential to an affidavit? I guess that's for you to decide. Well, if you're arguing, we should be. My question is why? I think because the court took quite a bit of time. It had all this evidence. We had a lengthy hearing. In fact, we had two hearings because the first one there wasn't a court report of precedent. The trial judge spent a couple of hours considering the briefs. He read the briefs and then considered two hours of oral argument on this. I think deference should go there just in terms of the level of attention that the court gave to the mental capacity issue. Because we have an agreement to arbitrate here that exists and it contains a delegation clause that Mrs. Mulligan failed to ever attack with specificity, that left the court with two key rules that are triggered by the United States Supreme Court cases Renishaw and Henry Schein. Those two key rules applied and needed to be respected by the court. The first rule is what I call the must respect rule. Henry Schein states that when the party's contract delegates the arbitrability question to the arbitrator, the court must respect the party's decision. The second rule is what I call the no power rule. Henry Schein stated that when the party's contract delegates the arbitrability question to an arbitrator, the courts may not override that contract. In that instance, Henry Schein tells us a court possesses no power to decide the arbitrability issue. The delegation clause here, again, it's in paragraph A2 of the five-page arbitration agreement and Mrs. Mulligan at page 13 of her brief filed with the appellate court concedes that that delegation clause, quote, expressly delegates all questions of arbitrability to the arbitrator and that includes questions regarding interpretation of the five-page arbitration agreement. So what did Mrs. Mulligan do here? She alleged that her interpretation of an ancillary attorney fee provision found on page two of the larger five-page arbitration agreement was substantively unconscionable and she then alleged that that substantive unconscionability tainted the entire five-page arbitration agreement as a whole and rendered it unenforceable. The trial court agreed with her but here is where the trial court got it to fail to follow the Federal Arbitration Act's federal body of substantive rules of severability. I want to stress that these are substantive federal rules and that comes from footnote four of the Renta Center decision which makes it clear this federal substantive rule of severability shall be followed in state courts regardless of what a state thinks its own severability laws would allow it to do. These are commands that are federal substantive rules that must be applied. So what that means here under the severability rule is that we have at least three different contracts. Number one, we have the larger nursing home care contract. Number two, we have the five-page arbitration agreement contained within that larger contract and the third contract we have is the delegation clause which appears in paragraph a2 of the five-page arbitration agreement. What the federal substantive rule of severability tells us is this. First, we know from Buckeye that the enforceability of the five-page arbitration agreement does not depend upon the enforceability of the larger contract i.e. the nursing home care contract in which it's contained. That same rule from Buckeye was extended by the Renta Center to apply with equal force to the third contract the delegation clause. So what that means is that the delegation clause found at paragraph a2 is independently severable and stands on its own and is itself enforceable regardless of the enforceability of the five-page larger contract for arbitration in which the delegation clause is contained. So what the court did is it erred by thinking that because Mrs. Mulligan was attacking the five-page arbitration agreement as a whole based on her substantive accountability argument with respect to the attorney fee clause that that gave the court permission to decide that issue. But it didn't because Mrs. Mulligan failed to ever make a challenge specifically directed to that third contract directed specifically to just the delegation clause. She never did that and her failure to do that is just like Mr. Jackson's failure to do so in the Renta Center decision. And the Renta Center court tells us where that leaves the court when a party fails to make that specific attack on the delegation clause. And what it means is the court has one choice only and that is to find the delegation clause valid and enforceable under subsections two and three of the FAA and to compel the parties off to arbitration. The second error that the trial court made was... Let me stop you there. You keep talking about this delegation clause as if it's a foregone conclusion that that is part of the arbitration agreement. I'm not so sure about that. Explain to me why you're citing the language in the agreement to be so absolute that it is a delegation clause because it doesn't seem consistent with the delegation clauses that you cited in cases in your brief. Okay, I can address that. First of all, there's no recipe, if you will, for exactly what a delegation clause has to say. Thirdly, as I pointed out, Mrs. Mulligan's already conceded in page 13 of her brief to this court that this is a delegation clause and she's conceded it, quote, expressly delegates all questions of arbitrability to the arbitrator. But more importantly, again, if we go to paragraph A2, specifically A2 small a, that's broad and comprehensive as the trial court recognized in his first trial court order. He's described this as a comprehensive delegation clause because it delegates all claims or controversies arising out of or in any way related to the agreement. So that's a very broad delegation clause. And then if you would go down to paragraph A2 small e as in Edward, that is a delegation clause delegating, quote, disputes regarding interpretation of this rider, end quote, to the arbitrator. And the rider, again, is a reference to the five-page arbitration agreement. And so I think it's pretty clear that that is absolutely a delegation clause. And because it went unchallenged, therein comes the rules that I've mentioned of Brenner Center and Henry Schein. So the second error that the trial court made is delegation aside. Let's just say there's no delegation clause here. Let's do that because I'm not convinced of the delegation clause. All right. Then what we have is under Mason by this court, which cites to Kinkle, and under this court's Long versus the Loft decision, we know questions regarding the interpretation of a contract involving arbitration. Those questions of contract interpretation are not for the court. Rather, they are for the arbitrator. And if you look at your decision in Mason, it's really on point because Mason, like our case, was a nursing home case with an arbitration agreement. The nursing home resident in that case argued that the arbitration's clause on attorney's fees prohibited his right to recover his attorney's under the Illinois Nursing Home Care Act, very much like Mrs. Mulligan is doing here. And what the Mason court correctly noted was this, quote, while the issue of whether a contract to arbitrate exists must be determined by the court, matters of contract interpretation are for an arbitrator to decide initially, end quote. And the Mason court there cited to Kinkle. So the court said it was not going to decide that issue because it was a matter for the arbitrator to decide. Likewise, the Long versus Loft court for the fourth district reached virtually the same decision. And therefore, Mrs. Mulligan's argument is the same. And it too is based on arguments of substantive unconscionability of this attorney fee provision and questions of unconscionability. If you think about it, think about substantive unconscionability, how do you decide if a contract is substantively unconscionable unless you engage in contract interpretation and construction? And therefore, for the reasons in Kinkle, Mason, and Long, her attack on the attorney fee provision as unconscionable must be left to the arbitrator. The third reason the trial court erred was even if there's not a delegation clause, and even if you put aside the arguments about contract interpretation I just that from the United States Supreme Court case law, that ancillary terms, the enforceability of ancillary terms is also for the arbitrator. Here, the ancillary term is this attorney fee provision. And we know from the United States Supreme Court cases cited by Carvajal being Greentree v. Basil, Howsam, and Pacific Care that, quote, the arbitrator rather than the court determines the validity of these ancillary provisions, end quote. And I want to drive this home because in Carvajal, it's cited to those three United States Supreme Court cases. And in Carvajal, Mr. Carvajal was bringing a Fair Debt Collection Practices Act, a federal statutory act. Under that statute, if he prevailed, he would get his attorney's fees. Mr. Carvajal argued that the arbitration agreement waived his right to attorney's fees under that statute. And what Justice Easterbrook said is, quote, whether any particular federal statute overrides the party's autonomy and makes a given entitlement, here the entitlement being the attorney's fees, makes that entitlement non-waivable, is a question for the arbitrator. And then he cited to those three- I have a question, Boyd, I'd like to ask. I want to make sure I understand your position. The plaintiff is arguing that the contract was both procedurally and substantively unconscionable. Under your view, is it the arbitrator or is it supposed to be the trial court to whom this was addressed? And who should be making- who should be resolving these claims? Questions of unconscionability are questions for the arbitrator, sir. That's the center. Both procedurally and substantively claims. Yes. And with regard to the question of arbitrability itself, you're saying that is also a question that the arbitrator is supposed to decide? Yes. Isn't that a complicated matter if the arbitrator is supposed to decide whether arbitration is appropriate? Aren't we presuming it's appropriate for him to have to fight it? The gateway question again for the court is to decide whether a written agreement to arbitrate exists. That is a contract formation question, and contract formation is the court's role, but contract formation is different and distinct from contract enforceability. They're two different things. So contract formation, yes, court decides. But once the court makes that decision and says there's an arbitration agreement that has been formed here and it contains a delegation clause, and Mrs. Mulligan failed to challenge specifically the validity of that delegation clause, just like Mr. Jackson did in RentaCenter, we're left with but to find that delegation clause valid and enforceable under Sections 2 and 3 of the FAA and compel the case off to arbitration. The court has no other jurisdiction. The trial court originally denied the, I think originally granted your motion for arbitration, did it not? Yes, he did. Okay. So the trial court in doing that was confronted with the objections made by the plaintiff and rejected them and said arbitration is appropriate. Correct. And in order to do that, he had to find she had the mental capacity to contract and he necessarily found that the contract existed and was formed. And subsequently, the plaintiff filed a petition to reconsider which the trial court granted, and it's that order which is on appeal now. Correct. What is your explanation of what the trial court said in granting the motion to reconsider? The court was wrong in following the lead of the Kalicinski case, and Kalicinski, I don't know how to say it any other way than this, Kalicinski blatantly violated the commands of the RentaCenter decision. In fact, if you read RentaCenter, there's a majority decision, and there's the dissent decision. Kalicinski decided that it was going to go with the thinking presented by the dissenters, even though that has been rejected by the majority in its opinion in RentaCenter. But be that as it may, please don't follow the lead of Kalicinski, I is wrong. But even if you were, even if you were going to say, you know what, we think we can disregard the delegation clause, despite what RentaCenter tells us we have to do. And we're going to delve in, we're going to look at this attorney fee provision, and we're going to decide if we think it's enforcing or not. Then what you need to do, please hold up and do a side by side comparison of the arbitration fee provision in Kalicinski. And when you do that, and you compare it to the arbitration provision in Carter, Carter, your Illinois Supreme Court case of Carter, what you will find is that the Carter attorney fee provision is just like ours, they virtually match each other. And what the Carter court, let me back up in the comparison, Kalicinski attorney fee provision does, it does waive the nursing home residents statutory, statutory right to attorneys fees under the Nursing Home Care Act. However, Carter, just like our attorney fee provision does not waive that statutory right to attorneys fees. And that's exactly what Carter looked at, and exactly what Carter held. In fact, Carter looked at virtually the same language as our attorney fee provision and said, it is a benefit to the resident because it gives the resident a contractual, I want to stress the word contractual right. And also you are out of time, but you'll have rebuttal. Thank you, sir. Ms. Rosen, please proceed with your argument. Thank you. May it please the court. I have a totally divergent perspective here. My perspective is that we are attacking contract formation. Contract formation is not quite as simple as Ms. Fudge tells you. Yes, my client did sign the contract, but as we all know, contract formation involves offer, acceptance, and consideration. So in consideration, what is the, we contend here that like Kalisinski, there's no consideration here. Most interestingly, Carter versus S.S.C. Odin, which Ms. Fudge relies on, supports our position that this unconscionability issue is part of the contract formation. It says in paragraph 18 of the Carter case, an arbitration agreement may be invalidated by a such as fraud, duress, or unconscionability without contravening section two of the federal arbitration act. And I believe that's essential here. That is what we are doing. So then we have to go to what is the consideration here? And let's talk, I'd like to just talk about the facts. This is not a case in a vacuum. This is not just a five-page arbitration agreement we're looking at. This was a 41-page single-spaced agreement and the arbitration agreement on it says it's just a rider to the agreement. It's not a separate agreement at all. And that started at page 35 of the 41 pages. It was the very last thing that had to be looked at. Now, excuse me, I wanted to ask you the same question I asked Ms. Fudge. Did you challenge the trial level, the mental capacity of your client to enter into a contract? Yes, we did. And Ms. Fudge was accurate. There was no live testimony. The evidence was that, and I do not believe you need to defer to that at all because you don't have to be deferential when there's no live evidence. Okay. Did you ask for a, to present live testimony? Like Ms. Fudge, I will agree. I don't think we did. And now, is my understanding correct that you're asking that if we want to agree with the law's position that we should remand for a hearing in which there would be evidence presented on the mental capacity of your client? Yes. Although I will say it's from the one case that that was decided. It's an abbreviated hearing, but yes. But that's really a minor point in my view. Well, counsel, just a moment. Okay. Sorry. I want to understand this procedurally why and how we should do that. If this is something you didn't request at the trial level, you wanted to present live evidence at the trial level, didn't you? No, but as the trial court recognized, the law changed between the time of the first decision and the second. Sanders versus Oak Brook Health Center, healthcare center was decided in 2022 after the first decision. And that changed the law. And interestingly, I don't think Sanders doesn't really develop what sort of shortened evidentiary hearing you're to hold, but that was the difference. I don't believe we were particularly entitled to an evidentiary hearing at the beginning. What court rendered the Sanders? First district. The Illinois law? Pardon me? Oh, absolutely. First district of the appellate court. It's in my brief that it said 2022 Illinois Act first 221347 paragraph 29. And you couldn't before Sanders have requested a testimony. I'm not going to die on that point, but it wasn't that wasn't the way the law went down. Okay, go ahead. Okay, so I think so the facts you're going back to the facts, there's no what is consideration. In this case, this this budget says the only bet the only benefit she relies on is the benefit of the amount of up to $5,000 in attorney's fees. If we go to arbitration, that's the big benefit. I guess that I don't consider that a benefit. And I don't think it's any benefit. Pardon me? Oh, go ahead. I'm sorry. I thought Judge Turner, Justice Turner was asking a question. I don't think 5000 is remotely similar to a benefit when you get all your attorney's fees under the Nursing Home Care Act. And you have to remember the public policy while it does favor arbitration. The Nursing Home Care Act is a very important piece of legislation in terms of public policy. There would be no incentive for any lawyers to be taking cases on nursing home care. If there wasn't the ability to recover attorney's fees, it used to be you got treble damages that was changed. But the point is the same. A lot of these cases are not big money winners. These are older people who don't often get big awards, but you have to get your fees back to make it a reasonable kind of case to take as a personal injury lawyer. And in this case, so I say there is no consideration. There's no benefit. There's certainly no benefit to a plaintiff from confidentiality. And there's no real benefit to a plaintiff from venue, picking the venue in an arbitration, who cares? It's irrelevant. So I don't think there's any proper consideration. So then we can look at unconscionability. And I believe that under Carter, that is the law. It also is the law under the Federal Arbitration Act. Section two says, I'm sorry, I just lost that paragraph. Section two says of the Arbitration Act says states may regulate contracts, including arbitration clauses, under general contract law principles, and they may invalidate arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract. So I think we have the right, the judge's rule, the judge's power is a little broader than Ms. Fudge tells us. Counsel, is my understanding correct that under the CARE Act, the plaintiff is entitled to attorney fees only if she prevails? Yes. Yes. Under the CARE Act, the plaintiff is entitled to attorney fees even if law prevails? A portion, up to $5,000, up to. Attorney's fees are generally way over that. If you look at, there's a case, I didn't cite it in the brief, but Grower v. Oak, it talks about this, and it talks about Illinois Supreme Court's reasoning for having the Nursing Home CARE Act give you fees. Sometimes these awards are only, you know, $7,000, but the attorney's fees would be... Well, is your argument that there's no consideration or that the consideration isn't enough? What consideration is enough? That there's no contract because there is no consideration or that there's no contract because the consideration isn't adequate. Well, $5,000 is not enough. I would say if it said, we'll pay all your attorney's fees, that would be a different story here. But here, we have nothing that benefits the plaintiff, and we have all these facts about proceedings. But you mean all the attorney fees, even if the law prevails? Because Justice Stein, I asked you about the provision that your client gets the attorney fees up to $5,000, even if she loses. I don't think you addressed that. No, you're right. You're absolutely right. You can't ask for all the fees if you lose. That would be gross. But $5,000 doesn't take you anywhere. When attorney's fees, if you do an hourly, people are billing, you know, $300, $400, $500 an hour, or you have a right to either the hourly or a contingency fee in these cases. $5,000 doesn't get you anywhere. Who would take a case that requires like years of discovery and fights over arbitration and everything else for $5,000? It's just not conceivable. Well, if you didn't fight over arbitration, that would reduce the cost, wouldn't it? Some, yes. Oh, yes. Of course, it would. But the arbitration, yeah, okay. So here, I believe we get to Carter case and Section 2 of the Arbitration Act get us to looking at unconscionability. And in this case, we have unconscionability based on procedural unconscionability and substantive. And the procedural is the fact that this is a 41-page document that's given to the client after she's been admitted and she's in her room. And in the reply brief, Ms. Fudge says, we don't cite anything to say that she was in her room. We most certainly do. And the deposition of Mary Andrews says, I think it's at page 427, she took it to Sandy's room. And she didn't give it to her until after she was admitted because that's what she said at page 388. Now, Ms. Fudge also said, oh, she could have looked at it, taken it before or look at that. It's not true. Ms. Andrews says she never gives it to anybody beforehand. She only lets a representative look at it on the computer at home if they sign in and that's after the fact also. So here, you got a woman who's in a nursing home who they know has high risk of falls. She's taking oxycodone, she says, and nobody disputes that. And she falls out of bed. And she only has to sign it once. In the 41 pages, there's many signatures, but you only sign it once, the beginning, and then you just click. And she's already there in her room. That's a very pressured situation, I would say, for this. It's just not right. She says, oh, she's a right to an attorney. That right is totally illusory. She's in her room, she's got a computer, and she's already been admitted. Counsel, let's switch sides. You're representing the nursing home. Never. Arbitration agreement. Tell me what procedures you would use that might pass muster of Lesley Rosen. Okay. Starting out, let's have the arbitration clause up front in the first one. Down at page 35, let it be page one. Let it be given out before they come in. Let us say, before we admit you, take a look at this and look at a lawyer. You have a right to have a lawyer. Let it say clearly, like this one did not, that signing this is voluntary and that you will get the same care no matter if you sign it or not. It doesn't say that. Don't give it to somebody on a little tablet, a computer tablet. Let me stop you there. What do you mean it doesn't say that? Doesn't it? It doesn't. Doesn't it indicate that you don't have to sign the arbitration agreement? It says you accept or you reject it in a font that is so tiny. And Ms. Fudge's answer to that is she could have enlarged it. Well, you tell me how many people you think can enlarge a font out of, people going into a nursing home can enlarge a font out of a computer tablet. I think that's nonsense. It did not say it's voluntary. It did not say you don't have to sign it. It just says I accept or I reject. And I assert that that is not the same, Your Honor. It's just not the same. And it should be in large letters at the front. I mean, just ask me what I think is right. It should be at the front, that this is an agreement that you may, right in the front, in big bold, it should say you can accept. You're saying that accept versus reject is not clear. That's your argument? As it says, it says decline. It says accept or decline. Does it not? I mean, I believe that's what it says. I don't think that. And then okay. And that's not clear? No, I don't think that's the same as you will get the same. You don't have to sign this and you'll get the same care if you sign it or not. Not at all. But what do you think decline means then? That's not the issue. I'm so sorry. I don't mean to be disrespectful. I know what decline means. Decline means you say no, but you decline what? It's just not clear enough. It's just not clear in big letters. You don't have to do this. You're going to get the same care one way or the other. And this is voluntary. You don't have to give up your rights and to trial by jury, to trial in court and not at the end of a, you're in a stressful situation. I know your honor wrote, it was involved in the decision in the long case, and this is very different, but I contended then. And I say, now you're in a stressful situation, just like you are when you're going for a surgery. And of course they don't have to explain everything. It's a regular contract. They don't have to explain everything, but these are essential terms. And these are, you're giving up essential rights to a jury trial or to a trial altogether. And it should be clear and it should be upfront. It should not be buried on page 35 of a 41 page agreement. And just to say, it's separate. It's a separate agreement. It is not. It doesn't, it says it's not, it says it's a rider and it is not. So I think those bits all go to the procedural unconscionability. Your honor, counsel, one other question with regard to people going into nursing homes, how does this work? Do they just show up with some family member or someone saying grandma needs to be admitted? And is that the first time the nursing home is for the first time dealing with these people? Or is this somehow contacted well in advance? Well in advance, no, but I mean, there's nothing in the record. I will tell you about this. This is not an issue in the record. Some, a lot of people come from nursing, from hospitals where the social worker will call. Some people are admitted family members, but they're not given the admission packet until after the admission is the word of their admissions person, Mary Andrews. So it's not like they say here, go home, go home, Justice Steinman and look at this and maybe show it to a lawyer and see if you think you'll like it. Not done. Not done until after you're admitted and they show you to your room and then they bring you a tablet. So as an example, if someone's in the hospital and it's going to be nursing care home after being released from the hospital and the hospital people and social workers there, the family knows about all this and they contact some nursing home. Yeah, that's how it goes. Pardon? That's how it happens a lot of times, not all the time. So the nursing home sends nothing? No, they send records. They send, I mean, in this case, they get the medical records. No, no. I'm talking about what does the nursing home send to the patients or family or anyone else about the procedure of getting into the nursing home and how that's going to work and what the contract will be. It's never sent in advance. Nothing is sent in advance from the nursing home to the patient in this case. What is typically said, and again, this is not in this record, a hospital will send medical records. The family, I presume, send medical records. In this case, Ms. Fudge accurately represented that the nursing home had her medical records and that's how they got the affidavit from looking at the medical. To be more clear, I want to understand. So your point is that the nursing homes don't provide in advance of someone showing up what the contract is going to be once they show up. Exactly. That's the point. Mary Andrews' deposition is very clear on that. After the admission, she brings it to the person's room. Sometimes she does it in her office, but in this case, she brought it to the room. Sometimes she answers questions. If they have questions, she doesn't remember if she answered any in this case. How far in advance of Mrs. Mulligan's admission into the loft was the loft contacted and told she's coming? I have no idea. Not in the record. Okay. So she might just have shown up that day? No, no. They had her medical records. They had her medical records. I don't know what the process is, but you don't just walk in off the street. All I know about this is from my personal experience with an older parent and a grandparent. This is not in the record. It's far afield. I know you don't just walk in off the street and say, I want to live here. I need nursing home services. I think a good number come from hospitals. But again, we're far afield. I asked you a lot of questions. Go ahead with the rest of your... I appreciate it. I just can't answer them because it's just not in the record. Okay. So we've talked about the procedural unconscionability. Now we're talking about the substantive and that's when it's so one-sided. In this case, I think the whole agreement is so one-sided. The only possible benefit that Ms. Fudge talks about is the confidentiality. That is all they're citing. I look through the contract for other possible benefits. I don't see any. Confidentiality is not a benefit for a patient. It's a benefit for a nursing home and picking a venue. What does a regular person know about picking a venue for an arbitration? That's no benefit. So what is the benefit? You're giving up everything for $5,000, up to $5,000. And for my last point, I want to say, if they're saying under your Mason case, it's not clear, but they're not really saying that they won't pay attorney's fees. If I'm going to lose this case, and I hope I'm not, I want you to condition that loss on a finding that the nursing home is waiving any argument that it's not to pay any attorney's fees other than $5,000 under the Nursing Home Act. Because if they're saying, oh, it's just not here, that's ridiculous. When something's not included, it's excluded. And there's no way they're being... I want that clear. That's what I have to say. Finally, I guess another last point is you don't have to pay attention to out-of-state court cases. I mean, you don't have to pay attention to the federal cases. You don't have to pay attention to the Supreme Court cases unless they're on constitutional issues. You don't have to pay attention to the first district either. I know that. You're a coordinate jurisdiction, but I believe that the two first district cases, Kalisinski and Turner, are well-reasoned and that they should be followed. Thank you. Okay, thank you. Is there any rebuttal? Yes, there is. Thank you. First of all, the FAA, the Federal Arbitration Act, is based on the Supremacy Clause of the United States Constitution. And therefore, the state courts here are absolutely required to follow any of the FAA's substantive body of arbitrability law. Also, I'd like to point this court to the Taylor decision, Taylor versus UDI, fourth district decision on a nursing home arbitration agreement, having to do with the fee-shifting provision. Now, again, this case wasn't about delegation, but even if you could decide these issues, in this decision, the court said the fee-shifting provision was not one-sided. So I think that we need to take a look at that. You heard the questions I asked Ms. Rosen. Let me raise the same question to you. It seems to me that her primary argument is these are people in bad shape mentally and physically, and they need extra consideration, and they have trouble, even if they're mentally competent with all this paperwork under these situations that they're in. You heard her suggestions. Why aren't they being followed? For instance, why doesn't, why didn't the law, or why don't they routinely? I don't know about this case, I'm just discussing policy. Why don't they send material like this in advance the proposed contract in advance to the nursing home residents, and say, look this over, and if you have any questions, we'll talk about it when you check in. Well, because arbitration is contract law, and you have to treat an arbitration- I'm not talking about arbitration or contract law. I'm talking about as a matter of policy. Why aren't they doing this? Well, you cannot treat- If we, in fact, agree with you here, why aren't we telling the nursing homes, you never have to change your practices to make them better, clearer, and more fair. You have to treat an arbitration agreement like any other contract, and so just like any other contract in the state of Illinois, you don't require somebody to sign up for their hotel contract before the night they check in to get to their room. You don't require somebody who's going to buy a Ford- So your argument is when granny goes to the nursing home, that's just like my going to Chicago for a weekend at the Hilton Hotel. The legislature requires there to be- Is that your argument, counsel? It's just the same? You have to treat an arbitration agreement like you would treat any other contract in the state of Illinois, number one. Number two, the legislature in the state of Illinois, as well as the federal government, requires that nursing homes enter into an admission contract at admission. We're required to do it at admission. What? So you mean you're barred from sending it in advance 24 hours so people can look it over? The law says to do it at admission, so- You're barred from sending it in advance so people can look it over and be surprised? That's your position? No, I'm not saying there's any bar to doing that, Your Honor, but I'm saying that if you wanted to make that the law as a requirement, then I'm saying you're placing an arbitration agreement on unequal footing with other contracts in the state of Illinois, and I'm telling you that the FAA absolutely would preempt that type of a law. The other thing- Do you have other questions for me, sir? No. Okay. You know, I heard a lot of procedural unconscionability arguments, but there's no evidence here that Mrs. Mulligan felt rushed, that she felt pressured, that she was in any pain at the time that she signed this agreement, so that's just all baseless. There's no basis in evidence for this. Also, she signed an affidavit, her own affidavit in this case, and you have it in the record. Look at the font size on that. So to come in here and say she can't read something on a tablet, again, there's absolutely no evidence of what her eyesight is other than the fact she was able to read the affidavit that she signed. Keep in mind, she signed herself in. This is not someone who came here with a family member, and the evidence is that she had been living in her own private home shortly before she came to move into the nursing home. Also, I want to point out that the Carter decision makes it very clear that you should not be weighing the adequacy of the consideration for an arbitration agreement, or any contract for that matter. You just need to have some consideration. The consideration that one party gives doesn't have to be equal to the other. It doesn't have to match. You just need to have consideration. And here, keep in mind that in Carter, there was not a delegation clause. That's why Carter was able to go in and look at that attorney fee provision. Here, we have a delegation clause. So that's where your focus needs to be. And you need to ask yourself, is there consideration to support the formation of that delegation clause? And the answer is yes. And the consideration is because both sides agreed mutually to that delegation clause. That is all the consideration that is needed to support that delegation clause. And then in- OK, counsel. You're out of time. Thank you. Thanks to both of you for your- Justice Turner, if it would be OK, I'd like to add just a quick remark that this is an instance, and we don't have enough of them, where I want to commend both counsel. You were asked a lot of questions, and I thought you both did a very fine job in your oral arguments, made your arguments more worthwhile as a result. So thank you. Thank you. My pleasure. Thank you. Thank you, Justice Steigman. The case is now submitted, and the court will stand in recess.